UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:10-cr-00165 JLT |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) |
| v. | |
| ALBERT GARZA, | (Sealed Doc. 104) |
| Defendant. | |

Albert Garza is a federal prisoner seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) due to his age, medical conditions, length of sentence already served, rehabilitation, and a combination of circumstances involving his imprisonment. (*See* Sealed Doc. 104; Doc. 111.) The Government opposes the motion, contending that Defendant does not satisfy the "extraordinary and compelling" standard applicable to his request. (Doc. 116.) Defendant filed a reply to the Government's opposition. (Doc. 121.) For the reasons set forth below, Defendant's motion is **DENIED**.

**I.    Background**

In March 2012, a jury found Defendant guilty of receipt and distribution of material involving the sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(2) (Count One), and possession of material involving the sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Two). (Docs. 52, 56.) In advance of sentencing, the probation officer

filed a Presentence Investigation Report. The PSR assigned a total offense level of 39 and a criminal history score of 0. (*See* PSR ¶¶ 31, 34.) This placed him in criminal history category I and resulted in an advisory sentencing guideline range of 262 to 327 months of imprisonment. (PSR ¶ 52.)

At the sentencing hearing, the Court adopted the findings in the PSR without change and varied downward for the reasons stated in Section VI of the Statement of Reasons. (SOR at 1-3.) Defendant was sentenced to a 240-month term of imprisonment as to Count One and a 120-month term as to Count Two, to run concurrently for a total of 240 months in custody, followed by a 180-month term of supervised release. (Doc. 64 at 2-3.)

Defendant is currently incarcerated at Federal Correctional Institution Lompoc I. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited November 10, 2025). His projected release date is December 28, 2027. *Id.*

## II.     Legal Standard

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Under the First Step Act of 2018, a defendant, or the Director of the Bureau of Prisons on the defendant's behalf, may move for a sentence reduction in the district court. 18 U.S.C. § 3582(c)(1)(A). Upon such motion,

> district courts may reduce [a defendant's] term of imprisonment if four conditions are met: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" warrant a sentence reduction; (3) a sentence reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission; and (4) the district court considered the factors set forth in 18 U.S.C. § 3553(a).

*United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022). "Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of

these grounds." *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022) (citing *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021)). The defendant bears the burden of "establish[ing] his eligibility for compassionate release." *Wright*, 46 F.4th at 951.

In 2023, the U.S. Sentencing Commission issued an amended policy statement outlining the circumstances under which "extraordinary and compelling reasons" exist to reduce a defendant's sentence. *See* U.S. Sent'g Guidelines Manual (U.S.S.G.) §§ 1B1.13(b)(1)-(6) (U.S. Sent'g Comm'n 2023). These include the defendant's medical circumstances, age and other related factors, family circumstances, victimization, unusually long sentence, or "other reasons." *Id*. A defendant must show, and the Court must consider, "extraordinary and compelling reasons" according to the current version of U.S.S.G. § 1B1.13. *See United States v. Arcila*, 716 F. Supp. 3d 1052, 1055 (D. Or. 2024), *reconsideration denied*, 2024 WL 2048643 (D. Or. May 6, 2024); *see also United States v. Neal*, 2024 WL 1886476, at *2 n.2 (E.D. Cal. Apr. 30, 2024).[1]

### III.   Discussion and Analysis

#### A.   Administrative Exhaustion

Section 3582(c) permits a defendant to apply to a federal district court for a sentence modification only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Defendant claims that he submitted a request for compassionate release to the warden of his BOP institution on July 11, 2024, and that as of August 14, 2024, he had not received a response. (Sealed Doc. 104 at 4; Doc. 111-3.) The Government agrees that Defendant has satisfied the exhaustion requirement under § 3582(c)(1)(A) because the warden denied his

---

[1] Before the November 2023 amendments, the Ninth Circuit held that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). The Ninth Circuit has not yet issued an opinion as to whether the recently amended § 1B1.13 is binding, but several district courts within this Circuit have treated it as such. *See, e.g., United States v. Neal*, 2024 WL 1886476, at *2 n.2 (E.D. Cal. Apr. 30, 2024) (collecting cases and concluding that "the current version of § 1B1.13 is binding"); *United States v. Naki*, 2024 WL 4145638, at *3 (D. Haw. Sept. 11, 2024) ("Since the amendments, *Aruda* is no longer good law to the extent that it held that the policy statements of the United States Sentencing Commission are not binding on motions for compassionate release.").

request on July 25, 2024. (Doc. 116 at 3, citing Ex. B.) Therefore, the Court finds that Defendant has exhausted his administrative remedies. *See e.g., United States v. Velasco*, 2024 WL 245638, at *2 (E.D. Cal. Jan. 23, 2024) ("Since Velasco's request has been denied, he has exhausted his administrative remedies and is permitted to file this motion."); *United States v. Portillo*, 2023 WL 5955999, at *1 (E.D. Cal. Sept. 13, 2023) (finding defendant met exhaustion requirement because more than 30 days had elapsed since filing request with warden).

### B.     Extraordinary and Compelling Reasons

To be eligible for relief, a defendant seeking compassionate release must show, and a court must consider, "extraordinary and compelling reasons" according to the current version of the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13. *See United States v. Arcila*, 716 F. Supp. 3d 1052, 1055 (D. Or. 2024), *reconsideration denied*, 2024 WL 2048643 (D. Or. May 6, 2024); *see also United States v. Neal*, 2024 WL 1886476, at *2 n.2 (E.D. Cal. Apr. 30, 2024).[2] As part of this inquiry, the court may consider a defendant's medical circumstances, age and other related factors, family circumstances, victimization, unusually long sentence, or "other reasons." *See generally* U.S.S.G. § 1B1.13(b)(1)-(6) (effective Nov. 1, 2023).

#### 1.     Medical Circumstances

Defendant asserts that he suffers from various medical conditions—including Type 2 diabetes, hypertension, hyperlipidemia, and coronary artery disease—which the BOP has not properly treated.[3] (*See* Sealed Doc. 104 at 1, 6; Doc. 111 at 13-14.) He relies on U.S.S.G.

---

[2] Prior to the November 2023 amendments, the Ninth Circuit held that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). However, the Ninth Circuit recently held that in 2023, "having regained a quorum, the Commission revised § 1B1.13 to govern motions by a defendant." *United States v. Bryant*, 144 F.4th 1119, 1124 (9th Cir. 2025) (citing Notice, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254, 28,256 (May 3, 2023)). "Now, courts are 'bound by' § 1B1.13 in deciding all compassionate release motions under § 3582(c)(1)(A)." *Id.* (citing *Chen*, 48 F.4th at 1098; *Concepcion v. United States*, 597 U.S. 481, 495 (2022)). The Court clarified that "*Aruda* has therefore been superseded to the extent that it sets out a different rule for motions filed by defendants after the effective date of the 2023 revisions to § 1B1.13." *Id.* n.1.

[3] Defendant also claims he suffers from "chronic back problems." (Sealed Doc. 104 at 6.) However, there is no documentation of this issue in the medical records submitted to the Court. (*See* Sealed Doc. 120 at 67 [listing Defendant's health problems as of July 2024].) He claims that he requires a lower bunk chrono due to his back problems, but a clinical encounter note from January 2024 reported that Defendant qualified for a "low bunk" due to his history of stroke, coronary stent placement, and high fall risk. (*Id.* at 23.) Separately, Defendant claims to have "eye vision issues," but does not assert that these are not being treated, and the record reflects that they are. (*See id.*

1  § 1B1.13(b)(1)(B), which applies in situations where a defendant is

2        (i) suffering from a serious physical or medical condition,

3        (ii) suffering from a serious functional or cognitive impairment, or

4        (iii) experiencing deteriorating physical or mental health because of the aging process,

5  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

8  U.S.S.G. § 1B1.13(b)(1)(B).

9      In opposition, the Government asserts that Defendant has not established that his ability to provide self-care has been substantially diminished. (Doc. 116 at 5.) It further maintains that Defendant's medical records demonstrate that the BOP has been able to monitor and treat his conditions. (*Id.* at 5-6.) The Court agrees. The fact that Defendant's medical conditions are chronic is not alone sufficient to justify his release, particularly if he is receiving adequate medical care. As noted in *United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020), "[t]o be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from … chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." (quoting *United States v. Weidenhamer*, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019)).

20      Defendant's medical records do not demonstrate that his conditions are so serious or so poorly treated as to diminish his ability to provide self-care within the environment of a correctional facility. In fact, they suggest the opposite. (*See, e.g.,* Sealed Doc. 115; Sealed Doc. 120 at 2, 11 ("BP well controlled"); *id.* at 11 (diabetes controlled with medication); *id.* at 124 (reporting "good control" over diabetes); *id.* at 46-48 (listing all prescribed medications from 2024).) It appears that BOP medical staff assess, monitor, and provide treatment through clinical encounters at FCI Lompoc, with occasional transport to outside and/or specialty providers as

---

at 36, 67 (noting low vision in both eyes); *id.* at 40 (vision screen); *id.* at 30 (indicating Defendant has worn eyeglasses since 2018).)

5

needed. (*See, e.g.,* Sealed Doc. 115 at 7 (noting cardiology consult); Sealed Doc. 120 at 11 (stent placement in 2016); *id.* at 4, 19 (offsite urology consult); *id.* at 95-96, 109 (outpatient surgical procedure at Lompoc Valley Medical Center); *id.* at 49-58 (routine dental radiographs, exam, and cleaning completed).)

Though Defendant asserts that he is not being treated properly for his medical issues, including receiving the medications he needs, he fails to identify which medications he needs but is not receiving or *how* he is being treated improperly. He also fails to argue that his ability to provide self-care is diminished, much less offer evidence supporting his position. *See United States v. Neal*, 2024 WL 1886476, at *4 (E.D. Cal. Apr. 30, 2024) ("More importantly, defendant … does not advance any arguments or offer any evidence to show that his medical conditions have substantially diminished his ability to provide self-care."). To the contrary, he states that he takes several prescription medications to treat his hypertension, pain,[4] heart issues, diabetes, and high cholesterol, and indicates that he does not require assistance with self-care. (Sealed Doc. 104 at 13-14.) These concessions undermine his motion. *See Neal*, 2024 WL 1886476, at *4 ("[D]efendant does not contest that he was and is receiving treatment for his conditions, which undercuts his motion.").

Finally, the sentencing court was aware of many of Defendant's medical conditions when it imposed a sentence in this case. Indeed, the probation officer relied upon Defendant's "multiple physical ailments"—including Defendant's heart issues and diabetes—as one of the mitigating factors in recommending a sentence below the guideline range. (*See* PSR ¶¶ 40-41, 69, 72.)

Based on the record before the Court, it appears that none of Defendant's medical conditions have substantially diminished his ability to provide self-care and it is also apparent that the BOP is adequately treating his conditions as needed. Therefore, Defendant has not demonstrated that his medical circumstances satisfy the requirements of U.S.S.G. § 1B1.13(b)(1)(B).

---

[4] Records indicate that Defendant receives acetaminophen daily to treat "impingement syndrome of shoulder," which was diagnosed in 2022. (Sealed Doc. 120 at 18, 36.)

### 2. Age of the Defendant

Defendant also seeks relief under U.S.S.G. § 1B1.13(b)(2), which permits compassionate release where a defendant "(A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." There is no dispute that Defendant meets the age and time-served requirements. The question is whether the record demonstrates a serious age-related deterioration in health, as opposed to chronic but stable conditions that are being managed in custody. The record does not support such a showing.

BOP medical records demonstrate that Defendant has a history of coronary artery disease, Type 2 diabetes, hypertension, and hyperlipidemia. (*See* Sealed Doc. 120 at 12.) However, as discussed above, these conditions are being monitored and treated by BOP medical staff. Defendant remains prescribed appropriate medications, receives follow-up evaluations and necessary procedures, and there is no indication of functional decline or an inability to perform daily activities.

The cases cited by Defendant do not compel a different result. (*See* Doc. 111 at 13, citing *United States v. Crow Eagle*, 2024 WL 4393396 (D.S.D. Oct. 3, 2024); *United States v. Pray*, 2024 WL 4345067 (D.N.J. Sept. 30, 2024); *United States v. Franklin*, 2024 WL 4295912 (S.D. Fla. Sept. 18, 2024).) First, contrary to Defendant's argument, *Crow Eagle* does not stand for the proposition that any older defendant with chronic conditions satisfies § 1B1.13(b)(2). Rather, the court in that case found a serious age-related deterioration in defendant's health "[b]ased on the combination of a [recent] stroke, the progression rather than improvement of his other ailments, and [his] numerous chronic diseases[.]" *Crow Eagle*, 2024 WL 4393396, at *4. It also noted that defendant's medical conditions had "increased in severity and frequency" as he aged, including worsening migraines and progressive difficulty breathing. *Id.*[5] The court's conclusion rested on recent, medically documented decline, not merely the presence of chronic conditions.

Similarly, *Pray* involved a defendant in his mid-70s who had been incarcerated for over

---

[5] The court also credited the defendant's age (71 years), which exceeded the age requirement under § 1B1.13(b)(2) and the average life expectancy of an American Indian male (68.6 years). *Crow Eagle*, 2024 WL 4393396, at *4.

7

35 years and suffered from multiple significant and compounding health conditions, including "severe" hip arthritis requiring double hip replacement, blindness in one eye, progressive kidney disease, enlarged prostate, pre-diabetes, hypertension, history of syncope, and past heart attack. 2024 WL 4345067, at *6. The court noted the combined effect of these conditions, which produced substantial limitations in daily life, including limited mobility; inability to stand for extended periods; urinary urgency and frequency limiting outdoor activity; and persistent kidney pain aggravated by difficulty accessing pain medication. *See id.* Even then, the court described the motion as a "close call." *Id.*, at *7.

In contrast to these cases, there is no showing of recent or progressive deterioration in Defendant's health. His conditions appear stable and medically controlled, and no treating provider has identified functional decline attributable to aging. For instance, as the Government notes, Defendant's diabetes appears well managed: his hemoglobin A1C levels were 5.8% (August 2024), 5.7% (July 2022), 5.6% (March 2022), and 5.8% (December 2021), all of which reflect overall improvement from 6.0% in October 2020.[6] (*See* Sealed Doc. 120 at 4, 62.)

*Franklin* is likewise distinguishable. There, the defendant had served nearly 29 years in custody and "suffer[ed] from a myriad of conditions, including hypertension, a kidney disorder, bursitis, cataracts, presbyopia, … arthropathy … [and] myositis, an incurable illness that causes the immune system to attack the muscles, which can result in significant disability and even death." 2024 WL 4295912, at *2. Thus, the medical conditions in *Franklin* were more serious than those documented here, both in terms of prognosis and potential impact on daily functioning.

Additionally, *Franklin* involved a change in law. Section 403 of the First Step Act eliminated mandatory sentencing "stacking" under § 924(c), reducing the sentence that would apply today from 300 months to 120 months. 2024 WL 4295912, at *3. The court found that this 15-year difference constituted a "gross disparity," which itself satisfied U.S.S.G.

---

[6] According to the National Institute of Diabetes and Digestive and Kidney Diseases, A1C levels between 5.7 and 6.4 percent indicate prediabetes, and 6.5 percent or above indicates diabetes. *The A1C Test & Diabetes*, U.S. Dept. of Health & Human Services, National Institutes of Health, https://perma.cc/5ULQ-ER2G (last visited November 10, 2025).

8

§ 1B1.13(b)(6).[7] *Id.* Although the order did not specify the precise weight afforded to each ground, the legal disparity plainly bore on the outcome. Here, by contrast, Defendant has served approximately 15 years, not three decades, and no change in law affects his guideline calculation or statutory exposure. *See infra,* Section III.B.3.c. Accordingly, *Franklin* does not inform the Court's analysis.

For these reasons, although the Court does not minimize Defendant's ongoing health conditions, § 1B1.13(b)(2) requires evidence of *serious* age-related deterioration, not merely chronic conditions common among older inmates. Because such deterioration is not demonstrated in the present record, U.S.S.G. § 1B1.13(b)(2) does not provide an extraordinary and compelling reason for a sentence reduction.

### 3. Other Reasons

Defendant additionally seeks relief under U.S.S.G. § 1B1.13(b)(5), which applies where a defendant "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."[8]

The Court has considered Defendant's asserted grounds, which include, in addition to his age and medical conditions discussed above, his: (1) harsh conditions of confinement; (2) history of cognitive impairment; (3) unusually long sentence; and (4) rehabilitative efforts. However, none of these circumstances—whether considered individually or collectively—are of "similar gravity" to the reasons set forth in U.S.S.G. §§ 1B1.13(b)(1)-(4). U.S.S.G. § 1B1.13(b)(5).

#### a. *Conditions of confinement*

Defendant claims he has endured "unusually harsh" conditions of confinement, citing his incarceration during the COVID-19 pandemic and a 2015 assault by a fellow inmate while Defendant was housed at FCI Big Spring. (Doc. 111 at 17-18.)

---

[7] U.S.S.G. § 1B1.13(b)(6) provides: "If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law … may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."

[8] Paragraphs 1-4 outline the defendant's medical circumstances, age, family circumstances, and whether the defendant was a victim of abuse during his or her incarceration. U.S.S.G. §§ 1B1.13(b)(1)-(4).

Generally, district courts may consider a defendant's conditions of confinement as part of the "extraordinary and compelling" inquiry. *See, e.g., United States v. Willis*, 663 F. Supp. 3d 1203, 1211 (D. Or. 2023); *United States v. Lopez-Ontiveros*, 2025 WL 1115052, at *8 (S.D. Cal. Apr. 15, 2025). However, district courts within the Ninth Circuit have consistently held that "general conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release." *United States v. Kvashuk*, 2023 WL 3866678, at *2 (W.D. Wash. June 7, 2023) (quoting *United States v. Bolden*, 2020 WL 4286820, at *7 (W.D. Wash. July 27, 2020)); *see also United States v. Menchaca*, 2021 WL 3271315, at *4 (N.D. Cal. July 30, 2021) (rejecting the "blanket argument that the existence of COVID-19 renders every prisoner's sentence 'more punitive' and in need of reduction"). *Lopez-Ontiveros* further explains that a defendant must show "real, individualized, and cognizable harm" resulting from his conditions of confinement. 2025 WL 1115052, at *7 (quoting *United States v. Martinez Encinias*, 682 F. Supp. 3d 993, 1006 (D.N.M. 2023)).

With respect to COVID-19, Defendant does not generally describe the conditions at FCI Lompoc or FCI Big Spring, nor does he demonstrate how those conditions affected him personally. *See Venters v. United States*, 2023 WL 6147604, at *2 (D. Utah Sept. 20, 2023) ("Courts have generally held that harsh conditions faced by all inmates are not extraordinary within the meaning of the First Step Act. Indeed, Mr. Venters only alleges generalized harm applicable to every inmate at FCI Sheridan and does not explain how the conditions have created extraordinary and compelling reasons to release him individually.") (internal quotation marks, footnotes omitted). That the pandemic resulted in harsher and more restrictive confinement is not unique to Defendant, every inmate in BOP custody during that time experienced similar restrictions.

Regarding the 2015 assault, the Court has reviewed the medical records documenting Defendant's injuries and treatment. (*See* Sealed Doc. 115 at 12-16.) However, Defendant does not explain how this past event—now more than a decade old—presents an extraordinary and compelling circumstance today.

There is no indication of any assault or specific threat since that time. Thus, to the extent

Defendant is arguing that he is fearful of being attacked due to his age and/or physical condition, but his generalized fear of future harm does not constitute an extraordinary or compelling reason. *See United States v. Burleson*, 2022 WL 17343788, at *3 (D. Nev. Nov. 29, 2022), *aff'd*, 2023 WL 3615670 (9th Cir. May 24, 2023) ("[A]n inmate's reasonable fear of assault by other inmates in the BOP is not an extraordinary or compelling reasons for compassionate release under 18 U.S.C. § 3582(c)(1)(A).") (quoting *United States v. Tate*, 2022 WL 827256, at *2 (W.D.N.C. Mar. 18, 2022)). Accordingly, the conditions of Defendant's confinement do not constitute extraordinary and compelling circumstances warranting compassionate release.

### b. *Cognitive impairment*

The Court also recognizes Defendant's history of social, emotional, and cognitive issues, which, as conceded by Defendant, were considered at the time of sentencing. (*See* Doc. 111 at 17, citing PSR and Doc. 61.)[9] However, Defendant identifies no evidence that he has a diminished ability to provide self-care based on his impairment(s), or that he needs "long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. §§ 1B1.13(b)(1)(B), (C). Absent such evidence, Defendant's conditions do not present an extraordinary and compelling reason to grant compassionate release.

### c. *Unusually long sentence*

Defendant claims that he received an unusually long sentence as a first-time offender. (Doc. 111 at 19.) He asserts that by 2011, 62.8% of defendants convicted of the same crime received below-guideline sentences. (Doc. 111 at 19, citing United States Sentencing Commission, *Federal Child Pornography Offenses*, p. ii, https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-childpornography-offenses (last accessed November 19, 2024).) What he fails to acknowledge is

---

[9] Indeed, these issues were expressly considered by the sentencing judge in determining the appropriate sentence. At the sentencing hearing, the Court noted Defendant's "significant history of physical and emotional struggles," including heart issues, diabetes, depression, and "mental impairment," and explicitly stated that these factors were weighed under § 3553(a). (Sentencing Tr., Doc. 86 at 21:8-17.) In departing downward, the Court explained that 240 months was a "reasonable" sentence after "taking into consideration his mental condition and also his various physical health issues." (*Id.* at 23:20-23.)

that he was one of those defendants—he received a sentence of 240 months, almost two years less than the low end of the guideline range.

Defendant also argues that if the Court were to compare the average downward departures and variances applied in 2010 to those applied in 2019-2023 as indicated in the Sentencing Commission's report, his sentence would have been between 169 and 194 months. (*See* Doc. 111 at 19-20.) This argument lacks sufficient legal support.

In *United States v. Eder*, 2024 WL 2749395 (D. Mont. May 29, 2024), JSIN data showed a 105–125-month disparity between the defendant's 365-month sentence and contemporary sentencing practices. *Id*., at *1. Here, Defendant's JSIN disparity is 45-48 months—less than half the disparity identified in *Eder*. See U.S. Sentencing Comm'n, *Judiciary Sentencing Information (JSIN)*, https://jsin.ussc.gov (last visited November 10, 2025) (average sentence of 195 months and median sentence of 192 months).

Though the Court acknowledges Defendant's positive rehabilitative efforts—he has incurred no disciplinary infractions, earned his GED, completed numerous educational and vocational courses, and paid his special assessment in full—the *Eder* court's determination was ultimately, an exercise of discretion; against the backdrop of a substantial sentencing disparity, the court, based on the specific facts of that case, gave considerable weight to the defendant's commendable record of rehabilitation. *See Eder*, 2024 WL 2749395, at *2. On this record, the disparity is meaningfully smaller, even when considered alongside Defendant's rehabilitative efforts, the Court does not find it sufficient to warrant relief under § 1B1.13(b)(5).

*United States v. Cirino* and *United States v. Garcia Nava* are likewise distinguishable because both involved changes in law that materially reduced sentencing exposure. *Cirino*, 2024 WL 1636442, at *4 (D. Nev. Apr. 15, 2024) (convictions no longer involved "crimes of violence," and thus, career-offender enhancement did not apply); *Garcia Nava*, 2024 WL 221439, at *3-4 (S.D. Cal. Jan. 19, 2024) (noting 79-87-month disparity based on safety-valve eligibility).

No comparable change in law affects Defendant's guideline calculation here. Under the current Guidelines Manual, his total offense level (39) and criminal history category (I) continue

to yield the same advisory range of 262 to 327 months.[10] Therefore, the length of Defendant's sentence—and any disparity that may now exist—does not present an extraordinary or compelling reason to grant Defendant's motion.

                *d.*      *Rehabilitation*

Rehabilitation, while not itself an extraordinary and compelling reason for sentence reduction, may be considered in combination with other circumstances in determining whether and to what extent a reduction in a defendant's term of imprisonment is warranted. U.S.S.G. § 1B1.13(d); *see also Willis*, 663 F. Supp. 3d at 1211 ("a [d]efendant's clean prison record and steps toward rehabilitation are only relevant to the analysis if other factors are extraordinary and compelling"). Because the Court finds no qualifying extraordinary circumstance with which rehabilitation could be paired, Defendant's commendable rehabilitative efforts cannot support relief. Accordingly, whether viewed individually or collectively, the circumstances Defendant identifies are not "similar in gravity" to the circumstances described in U.S.S.G. §§ 1B1.13(b)(1)-(4). U.S.S.G. § 1B1.13(b)(5).

In sum, having considered all of the potentially applicable circumstances under U.S.S.G. §§ 1B1.13(b)(1)-(6), the Court finds that Defendant has not demonstrated an "extraordinary and compelling" reason warranting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

**C.**    **§ 3553(a) Sentencing Factors**

Even if Defendant had demonstrated an extraordinary and compelling reason, the sentencing factors set forth at 18 U.S.C.§ 3553(a) do not support a reduction. At sentencing, the advisory guideline range for Count One was 262 to 327 months, and the Court imposed a sentence of 240 months—22 months below the low end of the guideline range—after expressly considering Defendant's physical and mental health conditions, lack of criminal history, and

---

[10] Under the current U.S. Sentencing Guidelines Manual (2025), the same guideline provision applies to Defendant's convictions under 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B) as they did in 2012, and each of the specific offense characteristics that applied at his original sentencing—prepubescent victim, distribution, sadistic or violent content, use of a computer, and number of images—remain in effect and carry the same enhancements. *See* U.S.S.G. §§ 2G2.2(b)(2), (b)(3)(F), (b)(4), (b)(6), (b)(7)(D). Those enhancements, coupled with the previously applied obstruction of justice adjustment under § 3C1.1, result in the same total offense level of 39. (*See* PSR ¶¶ 18-31.) According to the Sentencing Table in Chapter 5, Part A of the Sentencing Guidelines Manual, an offense level of 39 combined with a criminal history category of I results in the same advisory guideline range of 262 to 327 months that applied in 2012. *See* U.S.S.G. Ch. 5 Pt. A.

13

1  personal background. (*See* SOR; Sentencing Tr., Doc. 86 at 21, 23.) The Court also noted
2  Defendant's "significant history of physical and emotional struggles," including heart issues,
3  diabetes, depression, and "mental impairment," and stated that these factors were weighed under
4  § 3553(a). (*See* Sentencing Tr. at 21:8-17.) In departing downward, the Court explained that 240
5  months was a "reasonable" sentence after "taking into consideration his mental condition and
6  also his various physical health issues." (*Id.* at 23:20-23.)

   Granting release now would effectively create an additional downward variance on top of
   the variance already applied, resulting in a sentence far below the range that Congress and the
   Sentencing Commission prescribe for similarly situated defendants. Courts in this Circuit have
   recognized that such reductions risk creating unwarranted sentencing disparities. *See, e.g.,*
   *United States v. Shelden*, 2021 WL 3288597, at *2 (D. Nev. July 30, 2021) (granting early
   release "would amount to a several-level downward variance, creating an unwarranted
   sentencing disparity"); *United States v. Hernandez*, 2021 WL 1313173, at *4 (W.D. Wash. Apr.
   8, 2021) (compassionate release would "result in an unwarranted sentencing disparity"); *United*
   *States v. Arreola*, 2021 WL 4358663, at *6 (S.D. Cal. Sept. 24, 2021) ("The advisory guideline
   range for Count One was 262 to 327 months and the ultimate sentence on Count One was 52
   months less than the low-end of the advisory guideline range. Granting early release now would
   create unwarranted sentencing disparities.").

   In light of the sentence originally imposed and the rationale supporting it, the § 3553(a)
   factors—including the seriousness of the offense, the need to promote respect for the law, the
   need for deterrence, and the need to avoid unwarranted sentencing disparities—continue to
   weigh against a reduction under 18 U.S.C. § 3582(c)(1)(A).

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**IV.     Conclusion and Order**

       Based upon the foregoing, Defendant's motion for a reduction in sentence (Sealed Doc. 104) is **DENIED**.

IT IS SO ORDERED.

    Dated:   **November 12, 2025**                       /s/ Jennifer L. Thurston
                                                                          UNITED STATES DISTRICT JUDGE